AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>ANTHONY J. CHIARAMONTE<br><br>*Defendant(s)* | ) ) ) ) ) ) | Case No. 12-8304-WM |

FILED by _KL_ D.C.

JUL 3 1 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 2008 - March 2010__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. SECTION 1349 | The defendant knowingly and willfully conspired and agreed with other persons known and unknown, to commit mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Paul R. Hollinger, Special Agent, F.B.I.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __07/31/2012__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__    WILLIAM MATTHEWMAN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

### A. INTRODUCTION

I, Paul R. Hollinger, having first been duly sworn, do hereby state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been so employed for over seven years. In that time I have worked on several complex fraud investigations. I am currently assigned to the Miami Division's Palm Beach Office of the FBI. My duties include the investigation of violations of mail fraud, wire fraud, and other sophisticated fraud schemes. Through my experience in the course of these investigations, I have become familiar with telemarketing fraud. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United states Code (USC), 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, USC 1349.

2. The following information is based on my personal knowledge, discussions with City of Boca Raton Police Department detectives, information provided by cooperating defendants, and the review of documentary evidence. Where the statements of others are referenced, they are related in substance and are not verbatim. This Affidavit is being submitted solely to establish probable cause to believe that defendant ANTHONY J. CHIARAMONTE has conspired with others to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349. This affidavit therefore does not contain all of the information known to affiant or other law enforcement agents participating in the investigation concerning the offense.

1

**B.     FACTS**

3.     Between December 2008 and March 2010, defendant ANTHONY J. CHIARAMONTE and others were engaged in a telemarketing scheme, operating under various names such as Transatlantic Timeshares, LLC.; Euroamerican Timeshares, LLC.; E.A.T. Sales, LLC.; National Timeshare Liquidators, LLC.; NTL, LLC.; and Real Estate Purchasing Syndicate, LLC.  These and similarly named companies engaged in a telemarketing scheme using boiler rooms located in Boynton Beach and Boca Raton, Florida.  The scheme targeted timeshare owners throughout the United States and Canada but conspicuously endeavored to avoid victim owners located in Florida.  The scheme involved the making of false and fraudulent representations and promises that the companies were going to purchase the victim's timeshare.  Defendant ANTHONY J. CHIARAMONTE and others further falsely represented that they were financially prepared to purchase the victim's timeshare or had arranged to sell the victim's timeshare to another buyer.  The victims were told that this sale was on condition that the victim owner pay up-front fees, as much as several thousand dollars, for closing costs, title and deed searches, as well as other related expenses.  These fees were falsely promised to be maintained in an escrow account and the victims were falsely told that the money would be returned to the victim at the sale of the timeshare.  The scheme also solicited the timeshare owner to sell their unused ("banked") vacation weeks, again for thousands of dollars, if the victim paid the companies various up-front fees.

4.     The victim timeshare owners were initially contacted via telephone by telemarketers holding a position referred to in the industry as "openers" and/or "fronters."  The victims were identified from "lead sheets" procured from other telemarketing businesses.  The "opener" would attempt to entice the timeshare owner in the "sale" of their timeshare to

2

the business. Once interested, the victim would be forwarded to a "closer." The "closer" was responsible for negotiating the purported purchase of the timeshare on behalf of the business. The "closer" would discuss the terms of the contract, such as the purchase price of the timeshare, the initial up-front fees the victim would have to pay and the purported closing date. The "closer" would then cause a contract to be e-mailed, mailed, and/or faxed to the timeshare owner. The timeshare owner was instructed by the "closer" to mail or transmit the up-front fees to the company and to obtain a confirmation number from the mail carrier. The victims were routinely told that the closing was to occur in merely a few weeks after they mailed in their fees.

5. The defendant, and other conspirators, used fictitious names when transacting business with the victims. Moreover, to lend an air of legitimacy, defendant CHIARAMONTE, as well as others, would falsely identify themselves to the victims as the "Director of Sales." During the course of the scheme, some of the telemarketers would tell the victims that their business was using Royal Title Services, which was actually a fictitious company created by defendant CHIARAMONTE and another co-conspirator to further the scheme. In some instances, telemarketers referenced a real title company and falsely told the victims that they were using that company for title work when in fact no title work was ever performed.

6. The conspirators frequently changed the name of the company after just a few months. This change of name aided their evasion of law enforcement scrutiny and assisted the conspirators in furthering the scheme. Oftentimes after the company name changed, victim owners were re-solicited for additional up-front fees by the telemarketers under the new company name. The conspirators would falsely claim to the victims that the old company had closed and that this new company was going to move forward with the purchase. However, the

3

new company required additional up-front fees to proceed. As an inducement, they would falsely tell the victims that the victims would be credited with the fees that they had paid to the previous company. No refunds were ever provided to any victim.

7. There were neither closings nor purchases of any timeshares as promised by the telemarketers in their telephone calls and contracts. Virtually all of the money received by the scheme was pocketed by the organizers and telemarketers. The individual telemarketers who sold the timeshares received approximately one-third of the solicited funds, and the balance was kept by the organizers of the fraud.

8. Between April 2009 and January 2010, defendant ANTHONY J. CHIARAMONTE functioned as an "opener" and "closer." Defendant ANTHONY J. CHIARAMONTE, using an alias name, contacted numerous timeshare owners representing to them that his "company" had an interest in purchasing their timeshare. When acting as a "closer," defendant CHIARAMONTE, by telephone, negotiated the amount of money that the victim would have to send for up-front costs before the company would "purchase" the victim's timeshare. Defendant CHIARAMONTE used the following fictitious names: Anthony James, A.J. Parker, and Chris Cunningham. On or about September 17, 2009, victim V.I. of Minnesota was telephonically solicited by E.A.T. Sales, in Boca Raton, Florida for the purchase of his/her timeshare. On the same date, Defendant CHIARAMONTE, using the alias name "A.J. Parker," caused to be emailed a contract, on behalf of E.A.T. Sales, for the purchase of a timeshare belonging to V.I. This in turn caused victim V.I. to send, via FedEx, on or about September 22, 2009, a check in the amount of $2,000.00 to E.A.T. Sales.

9. Defendant CHIARAMONTE, along with another co-conspirator, signed the signature card establishing a corporate bank account for National Timeshare Liquidators, LLC. Defendant CHIARAMONTE also established a mail box drop on behalf of E.A.T., LLC. Defendant CHIARAMONTE'S name was placed on the mail box contract as the only person empowered to retrieve mail on behalf of National Timeshare Liquidators from the mail drop. Investigation established that Defendant CHIARAMONTE frequented the mail drop location in order to retrieve mail on behalf of the company. CHIARAMONTE was listed as a corporate officer in the documents establishing the companies: National Timeshare Liquidators, LLC., and Royal Title Services, LLC., as outlined in the paragraphs above. Defendant CHIARAMONTE received approximately $316,964.06 from his fraudulent timeshare activities. Based upon a review of financial records the above-described scheme generated in excess $2.6 million dollars.

C. **CONCLUSION**

10. Based on the foregoing there is probable cause to believe that defendant ANTHONY J. CHIARAMONTE did knowingly and willfully conspire to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343; all in violation of Title 18, United States Code, 1349.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Paul R. Hollinger, Special Agent, FBI

Sworn to before me this
31st day of July, 2012

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 12-8304-WM

## BOND RECOMMENDATION

DEFENDANT: Anthony J. Chiaramonte

PRE-TRIAL DETENTION

(Personal Surety) (Corporate Surety) (Cash) (<u>Pre-Trial Detention</u>)

By: _____
/AUSA:   Kerry Baron

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   Special Agent, Paul R. Hollinger
(<u>FBI</u>)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: __12-8304-WM__

UNITED STATES OF AMERICA

vs.

ANTHONY J. CHIARAMONTE,

Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
Kerry Baron
Assistant United States Attorney
Florida Bar No. A5500040
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
TEL: (561) 820-8711
FAX: (561) 805-9846